UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLENE COLEMAN  )  <br> *Plaintiff*,  ) <br> ) <br> v.  ) <br> ) <br> CITY OF HARTFORD, *et al.*,  ) <br> *Defendants*.  ) | CASE NO. 3:24-cv-01994 (KAD) <br><br><br><br><br> January 27, 2026 |

## MEMORANDUM OF DECISION
## RE: DEFENDANTS' MOTION TO DISMISS (ECF NO. 26)

Kari A. Dooley, United States District Judge:

Plaintiff Carlene Coleman ("Plaintiff"), a former employee of the City of Hartford, proceeding *pro se*,[1] brings this action against Defendants City of Hartford, Marlene Fleeting, and Liany Arroyo (collectively "Defendants") alleging, *inter alia*, that Defendants discriminated against her on account of her race and color in violation of state and federal law while she was an employee of the City of Hartford. Specifically, Plaintiff asserts federal causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.;[2] 42 U.S.C. §§ 1981, 1983, 1988; and the Fourteenth Amendment to the U.S. Constitution in addition to state law causes of action under the Connecticut Fair Employment Practices Act, Stat. § 46a-51 et seq. as well as for defamation.[3] Am. Compl., ECF No. 9. On May 26, 2025, Defendants filed the instant Motion to Dismiss pursuant to Rule 12(b)(5)–(6) of the Federal Rules of Civil Procedure, arguing Defendants

---

[1] Plaintiff was represented by retained counsel at the time the action was commenced but her counsel has since been disbarred. *See* ECF No. 34. Thereafter, Ms. Coleman entered a *pro se* appearance. *See* ECF No. 35. However, counsel filed the operative Amended Complaint, and counsel filed the Opposition to the Motion to Dismiss.

[2] Plaintiff also cites the Civil Rights Act of 1866 in the introduction to the Amended Complaint, but there is no further reference to any claim asserted thereunder in the Complaint. Am. Compl., ECF No. 9 at ¶ 1.

[3] Plaintiff asserts that this Court has jurisdiction over her state law claims pursuant to 28 U.S.C. § 1332. *See* Am. Compl., ECF No. 9 at ¶ 2. This is incorrect as the statute cited confers original jurisdiction in the district courts where there is diversity of citizenship between the parties, which clearly does not apply here. The Court notes however, as discussed *infra*, that it may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

Fleeting and Arroyo were not properly served and that Plaintiff has not plausibly alleged any discrimination claims against any of the Defendants. ECF No. 26. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED.

**Allegations**

The Amended Complaint contains the following factual allegations, all of which are accepted as true for purposes of resolving the Motion to Dismiss. Ms. Coleman is an African American woman who had a criminal record from 1992. Am. Compl., ECF No. 16 at ¶¶ 4, 10–11. Ms. Coleman has had no further interaction with the criminal justice system since her 1992 conviction and her record was expunged in October 2022. *Id*. at ¶¶ 10–11. Ms. Coleman began her employment with the City of Hartford in July 2020. *Id*. at ¶ 12. Since then, Ms. Coleman held several temporary and permanent positions with the City of Hartford. During the relevant period, Ms. Coleman was employed at different times as an Administrative Office Assistant, Administrative Assistant, and Nutritional Aid. *Id*. at ¶¶ 12, 17, 34.

In or about July 2020, Ms. Coleman began her first 90-day temporary position as an Administrative Office Assistant for the City of Hartford's Registrar of Voters Office. *Id*. at ¶ 12. Shortly after she began work, Ms. Coleman learned that the manager of Human Resources, Defendant Marlene Fleeting, directed Ms. Coleman's departmental director, Noel McGregor, to terminate her because of her criminal record. *Id*. at ¶ 13. Ms. Coleman was not terminated at that time. *Id*. Upon information and belief, Ms. Coleman alleges other employees also had criminal histories but only she—an African American woman—was targeted because of it. *Id*. at ¶ 14. Due to her satisfactory performance, Ms. Coleman's term was extended an additional 90 days. *Id*. at ¶ 16.

Approximately four weeks after the conclusion of Ms. Coleman's second 90-day term, Ms. Coleman started a new 90-day temporary assignment as an Administrative Assistant in the Hartford Clerk's Office. *Id*. at ¶ 17. Ms. Fleeting again directed Mr. McGregor to terminate Ms. Coleman, but he did not. *Id*. at ¶ 18. Ms. Coleman's term was extended seven months based on her satisfactory performance. *Id*. at ¶ 19. Mr. McGregor, who had twice refused to terminate her, recommended she apply for another temporary 90-day position at the conclusion of Ms. Coleman's term at the Clerk's Office. *Id*. at ¶ 21.

Accordingly, Ms. Coleman applied for a temporary 90-day position as a Worksite Monitor at Hartford's Health Department. *Id*. Mr. McGregor recommended to the supervisor, Elizabeth Kavanagh, that Ms. Coleman be hired. *Id*. Following an interview by Ms. Kavanagh and Carmen Chaparro, Ms. Coleman received notification in writing that she was hired. *Id*. at ¶ 22. However, four days before Ms. Coleman's start date, Ms. Chaparro notified Ms. Coleman by email that the offer was withdrawn. *Id*. at ¶ 23. Ms. Coleman sought clarification and was told to reach out to Human Resources. *Id*. at ¶ 24. Upon doing so, Ms. Fleeting informed Ms. Coleman that the withdrawal was due to her criminal record. *Id*. at ¶ 25. This withdrawal caused tremendous humiliation and turmoil for Ms. Coleman. *Id*. at ¶¶ 24–27.

While working night shifts as a CNA for Assisted Living, Ms. Coleman continued applying for jobs and interviewed again with the City of Hartford WIC Office for a Nutritional Aid vacancy. *Id*. at ¶¶ 28–30. Ms. Coleman reached out to Mr. McGregor for assistance, but he replied that his hands were tied and he could not recommend her for any more positions. *Id*. at ¶ 31. Ms. Coleman did eventually receive an offer for the Nutritional Aid position, which she began in May 2022. *Id*. at ¶ 34.

For the four months that Ms. Coleman worked as a Nutritional Aid, she was treated poorly. Her supervisor, Shana Brierley, went on maternity leave the day before Ms. Coleman began and the other staff refused to formally train her. *Id*. at ¶¶ 35–37. Her interim supervisor, Ponita Khouy, assigned employees Eddie Vega and Elizabeth Gomez to assist Ms. Coleman with training, but they did not do so in any structured manner. *Id*. at ¶ 36. Mr. Vega would assist Ms. Coleman when she sat at his desk, but Ms. Khouy required Ms. Coleman to sit at her own desk, resulting in Ms. Coleman being largely left to train herself. *Id*. at ¶¶ 36–37. Ms. Coleman was also followed by Ms. Khouy, or another employee, Sophia Bonnick, at all times, including when she went into the kitchen or the bathroom. *Id*. at ¶ 38. Ms. Chaparro would regularly visit the office and would speak negatively about Ms. Coleman with Ms. Khouy, Mr. Vega, Mr. Bonnick, and Ms. Gomez in a remote area of the office. *Id*. at ¶ 39. When Ms. Brierly returned from maternity leave, she did not create a plan to address Ms. Coleman's lack of training. *Id*. at ¶¶ 41–42.

On October 13, 2022, Ms. Coleman met with Ms. Brierly, Ms. Chaparro, and Ms. Arroyo, who informed her they were aware of her criminal record and she was not a fit for the office. *Id*. at ¶ 43. Ms. Coleman was then terminated before the conclusion of her probationary period. *Id*. at ¶ 44. Ms. Coleman alleges that she later found out from Mr. Vega that there was a plan to terminate her since the start of her employment and that others had falsely reported she was not doing her work, though Ms. Bonnick had refused to participate in such false claims and attempted to advocate for Ms. Coleman to keep her job. *Id*. at ¶ 45.

Ms. Coleman continued to apply for employment and received an offer from the Town Clerk's Office in November 2022. *Id*. at ¶ 46. Ms. Fleeting learned of the offer and shared[4] Ms.

---

[4] The Amended Complaint asserts that Defendant Fleeting shared Plaintiff's criminal record with Thea Montanez and then-Mayor Luke Bronin. It is unclear from the pleadings what role Ms. Montanez held. *See* Am. Compl., ECF No. 9 at ¶ 47.

4

Coleman's criminal record as well as claimed that Ms. Coleman had been stealing time in her previous position—an accusation that had never been raised to Ms. Coleman. *Id*. at ¶¶ 47–48. Ms. Coleman's offer was rescinded. *Id*. at ¶ 49.

Ms. Coleman filed a dual complaint with the Connecticut Commission on Human Rights and the U.S. EEOC alleging that the termination and two recissions were unlawful misconduct on the basis of race and color because of Ms. Coleman's criminal conviction. *Id*. at ¶ 50. Both entities issued notice of Ms. Coleman's right to sue in September 2024. *Id*. at ¶ 9.

**Procedural History**

On December 16, 2024, Plaintiff filed her initial Complaint against Defendants. Compl., ECF No. 1. On January 10, 2025, she filed an Amended Complaint asserting claims for violations of her civil rights under Title VII of the Civil Rights Act of 1964; 42 U.S.C. §§ 2000e et seq.; the Civil Rights Act of 1866; 42 U.S.C. §§ 1981, 1983, 1988; and the Fourteenth Amendment to the U.S. Constitution. Am. Compl., ECF No. 9 at 1, 11.[5] Plaintiff also raises state law claims for defamation and a violation of the Connecticut Fair Employment Practices Act, Conn Gen. Stat. § 46a-51 et seq. *Id*. at 12–13. On May 1, 2025, Defendants filed a Motion to Dismiss the Amended Complaint. ECF No. 26. On May 29, 2025, Plaintiff filed an Objection to the Motion to Dismiss. ECF No. 30. On June 23, 2025, Defendants filed a Reply brief. ECF No. 33.

**Standard of Review**

A party may move to dismiss a complaint for insufficient service of process under Rule 12(b)(5). *See Rzayeva v. United States*, 492 F. Supp. 2d 60, 74 (D. Conn. 2007). The motion to dismiss must be granted if the plaintiff fails to serve a copy of the complaint and summons on the

---

[5] The Court refers to page numbers rather than paragraph numbers here because the paragraph numbers in the Amended Complaint are mislabeled beginning on page 11 where Count 2 and the subsequent counts each begin at ¶ 59. Am. Compl., ECF No. 9 at 11–14.

defendants under Rule 4 of the Federal Rules of Civil Procedure. *Id*. at 74. "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id*. (quoting *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999)).

To survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to a presumption of truth. *Id*. Nevertheless, when reviewing a motion to dismiss, the court must accept well-pleaded factual allegations as true and draw "all reasonable inferences in the non-movant's favor." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604 F.3d 692, 699 (2d Cir. 2010).

**Discussion**

In seeking to dismiss the Amended Complaint, Defendants raise eight arguments: (1) claims against Defendants Fleeting and Arroyo should be dismissed for lack of proper service; (2) claims against Defendant Arroyo should be dismissed for lack of personal involvement; (3) Plaintiff has failed to allege a plausible claim for relief as to counts 1–4; (4) Plaintiff has failed to allege a cognizable claim for discrimination pursuant to 42 U.S.C. § 1981; (5) Plaintiff has failed to allege a cognizable cause of action for a Fourteenth Amendment violation; (6) Plaintiff has failed to allege a cognizable cause of action for a Title VII violation; (7) Plaintiff has failed to

allege a cognizable cause of action for a violation of the Connecticut Fair Employment Practices Act, Connecticut General Statutes § 46a-51; and (8) Plaintiff has failed to allege a cognizable cause of action for defamation.  *See* Mot. to Dismiss, ECF No. 26 at 1–2.  For the reasons that follow, Defendants' Motion to Dismiss, ECF No. 26, is GRANTED.

*Insufficient Service of Process*

The Court first addresses Defendants' contentions that the claims against Defendants Fleeting and Arroyo should be dismissed for lack of service pursuant to Rule 12(b)(5).  *See* Mot. to Dismiss, ECF No. 26-1 at 17–19; *see also McRae v. Fischer*, No. 9:17-cv-00146 (BKS/CFH), 2017 WL 3535298, at *2 (N.D.N.Y. July 14, 2017) (finding a court must address the issue of proper service before any argument that Plaintiff failed to state a claim under Rule 12(b)(6)).  Defendants allege that Plaintiff's claims against Defendants Fleeting and Arroyo are brought against them in their personal/individual capacities, but that they were not served in their personal capacities.  *See* Mot. to Dismiss, ECF No. 26-1 at 17–18.  Defendants contend that the process, which was served on a staff member in the City of Hartford's Human Resources department, rather than on Defendants Fleeting and Arroyo in person or at their usual place of abode, was invalid. *See id*.  In response, Plaintiff clarified that service was made on a Human Resources staff member at the City Clerk's Office, which she argues was consistent with Connecticut General Statutes § 52-57(b)(7).  *See* Opp. to Mot. to Dismiss, ECF No. 30-1 at 5.

Pursuant to Rule 4(e)(1) of the Federal Rules of Civil Procedure, service may be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."[6]  The applicable law in

---

[6] Not at issue in the present motion, Fed. R. Civ. P. 4(e)(2) provides that service may be accomplished by delivering a copy of the summons and complaint to the defendant personally, leaving a copy of both at the dwelling or usual place of abode of the defendant, or delivering a copy to an authorized agent.

7

Connecticut is Connecticut General Statutes § 52-57.  Subsection (a) provides that "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state."  Subsection (b) provides in relevant part: "Process in civil actions against the following-described classes of defendants shall be served as follows: . . . (7) against an employee of a town, city or borough in a cause of action arising from the employee's duties or employment, upon the clerk, assistant clerk, deputy clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the employee."

The question for this Court is whether delivery to the City of Hartford Clerk's Office complied with state law.  Fed. R. Civ. P. 4(e)(1).  Defendants argue that service did not comply because Plaintiff brought claims against Defendants Fleeting and Arroyo in their individual capacities and thus, service should have been made on them personally pursuant to Section 52-57(a), rather than through the Clerk's office.  *See* Mot. to Dismiss, ECF No. 26-1 at 17–18.  Plaintiff contends that because they were city employees, their service was sufficient under Connecticut General Statutes § 52-57(b)(7).  *See* Opp. to Mot. to Dismiss, ECF No. 30-1 at 5–6.

As a preliminary matter, the Court observes that Defendants also argue for the first time in their Reply brief that Defendant Arroyo's service was improper because she was not a city employee at the time of service, nor is she today.  But significantly, Defendants cite no evidentiary support for the assertion that she was not and is not a city employee.  *See* Reply, ECF No. 33 at 4.  They offer only a single sentence in the Reply brief without citation to any evidentiary support.  *Id*.  This is not therefore a basis upon which the Court can determine the adequacy of service or the applicability of Section 52-57(b).

In asserting that Section 52-57(b) provides a valid basis upon which to serve Defendants Arroyo and Fleeting, Plaintiff relies on *Rogers v. City of Middletown*, No. 3:22-cv-1545 (VDO), 2024 WL 4814235, at *3 (D. Conn. Nov. 18, 2024) and *Field v. City of Hartford*, No. 3:18-cv-1803 (JAM), 2019 WL 4279011, at *3–6 (D. Conn. Sept. 9, 2019), which hold that service on a municipal employee pursuant to Connecticut General Statutes § 52-57(b)(7) is permitted as the statute draws no distinction between individual and official capacity claims. *See also Cane v. City of Hartford*, No. CV206063130S, 2022 WL 620833, at *2 (Conn. Super. Ct. Feb. 4, 2022) ("Service under § 52-57(b)(7) is an optional alternative to personal or abode service under General Statutes § 52-57(a)."); *El Ex-Relatione Dawes v. Whitehead*, No. 18-cv-02033 (CSH), 2019 WL 5394578, at *4 n.6 (D. Conn. Oct. 22, 2019) (identifying unsettled law where municipal employee defendants are sued in their individual and official capacities). Defendants contend, without much analysis, that *Rogers* and *Field* are inapplicable and instead rely on *Davis v. Mara*, 587 F.Supp.2d 422 (D. Conn. 2008), and *Bogle-Assegai v. Conn.*, 470 F.3d 498 (2nd Cir. 2006).

Defendants' reliance is misplaced. Both *Davis* and *Bogle-Assegai* involved the manner by which *state* employees are served pursuant to Section 52-64(a), a statute not implicated here, which required service on the Attorney General. The Connecticut Supreme Court has held that in the absence of service pursuant to Section 52-57(a), service on the Attorney General under Section 52-64(a) was sufficient only as to official capacity claims. *Field*, 2019 WL 4279011 at *5 (citing *Harnage v. Lightner*, 328 Conn. 248, 254 (2018)). The Court's analysis in *Field*, to include the rejection of the very argument advanced by Defendants Arroyo and Fleeting, is thorough, well-reasoned and ultimately persuasive. As such, the Court finds that service on Defendants Fleeting and Arroyo was sufficient under Connecticut General Statutes § 52-57(b)(7) and therefore also

9

complied with Fed. R. Civ. P. 4(e)(1). *See Rogers* 2024 WL 4814235, at *3; *Field*, 2019 WL 4279011, at *3–6.

*Federal Law Claims*

Plaintiff brings three counts against Defendants under federal law. Plaintiff's first count in the Amended Complaint, alleges race and color discrimination against Fleeting and Arroyo brought pursuant to § 1983 and § 1981 for intentionally violating her rights by a variety of adverse employment actions on the basis of race and color and due to her criminal record. Am. Compl., ECF No. 9 at ¶¶ 59–64. Plaintiff's second count alleges a violation of the Equal Protection clause of the Fourteenth Amendment of the U.S. Constitution on the basis of her race and color. *Id*. at 11. Plaintiff's third count alleges race and color discrimination in a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., against the City of Hartford. Am. Compl., ECF No. 9 at 11–12.

Broadly, Defendants argue that the Amended Complaint is devoid of any factual allegation that would support the inference that their conduct derived from race-based animus or was motivated by Plaintiff's race or color in any way, shape, or form. *See* Mot. to Dismiss, ECF No. 26. The Court agrees with Defendants.

"Section 1983 gives a cause of action to any person who has been deprived of [her] constitutional rights, privileges or immunities under color of state law." *Powell v. Workmen's Comp. Bd. of State of N.Y.*, 327 F.2d 131, 135 (2d Cir. 1964). The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). There are multiple theories

under which a race based Equal Protection claim may be advanced. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 336–37 (2d Cir. 2000). To state a claim under the Equal Protection Clause under any race-based theory, Plaintiff must allege that a government actor intentionally discriminated against her on the basis of her race or color. *Id*. at 337; *see Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) ("The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself. Thus, to establish a violation of the Equal Protection Clause . . ., a plaintiff must show that . . . the defendant intended the discrimination to occur."). "Discriminatory purpose 'implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its *adverse effects* upon an identifiable group.'" *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 50 (2d Cir. 1999) (alterations in original) (citing *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)). "[C]laims of race-based discrimination under the Equal Protection Clause . . . require that intentional discrimination be alleged in a non-conclusory fashion." *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)).

Similarly, "Section 1981 bars certain racially motivated and purposefully discriminatory acts." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (citing *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391). To establish a claim under § 1981, a plaintiff must allege facts supporting the following elements: (1) plaintiff is a member of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities. *See Brown*, 221 F.3d at 339 (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)). "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Id*. (citing 42 U.S.C. § 1981(a)). "Section

1981, like the Equal Protection Clause, only prohibits intentional racial discrimination." *Id*. (citing *Gen. Bldg. Contractors Ass'n*, 458 U.S. at 391; *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir. 1988) (holding that to plead a § 1981 claim alleging selective enforcement, plaintiff must allege instances in which "similarly situated" non-minorities were treated differently)). Accordingly, plaintiffs must meet the same pleading standard for their § 1981 claims as for their § 1983 claims under the Equal Protection Clause. *Id*.; *see also Gant*, 195 F.3d at 141 ("The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself. Thus, to establish a violation of . . . § 1981, a plaintiff must show that . . . the defendant intended the discrimination to occur.").

As significant here, "complaints relying upon 42 U.S.C. § 1981 et seq. are plainly insufficient unless they contain at least some allegations of facts indicating a deprivation of civil rights." *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir. 1975)(citing *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972)). "[The Second Circuit] has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed. Diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977) (citations omitted).

Finally, Plaintiff asserts race-based discrimination pursuant to Title VII. Discrimination claims under Title VII are analyzed using the *McDonnell-Douglas* burden-shifting framework. *See McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The test proceeds as follows: (1) the plaintiff "bears the minimal burden of setting out a prima facie discrimination case," (2) if the plaintiff satisfies their burden, the plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse

employment action," and (3) if the defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–806 (1973)) (cleaned up).

To establish a prima facie discrimination case, Plaintiff must show: (1) "[s]he belonged to a protected class," (2) "[s]he was qualified for the position," (3) "[s]he suffered an adverse employment action," and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and citations omitted). If a plaintiff does not have direct evidence of discriminatory intent, plaintiff may present evidence of disparate treatment, such as evidence that his employer treated him less favorably than similarly situated employees outside of his protected class, to support an inference of discriminatory intent. *See Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89–90 (2d Cir. 2019) (citation omitted).

The Court has reviewed the Complaint for factual allegations which would support the inference that Defendants' conduct derived from race-based animus or was otherwise motivated by Plaintiff's race or color as is necessary to support each of her federal claims. Plaintiff broadly, and in a wholly conclusory and sometimes vitriolic fashion, alleges that Defendants intentionally discriminated against her on the basis of her race and color, when she suffered the various adverse employment actions alleged in the Amended Complaint. *See* Am. Compl., ECF No. 9 at 8, 10–12; *see also Iqbal*, 556 U.S. at 664 (stating that on a motion to dismiss, allegations that are mere conclusions "are not entitled to the assumption of truth"). The only factual allegation relevant to Plaintiff's claims is that Plaintiff is an African American woman. Am. Compl., ECF No. 9 at ¶ 4. There are no allegations regarding the race or color of any of the defendants or Plaintiff's co-

13

workers or other city employees. Nor are there allegations of specific instances of conduct which might give rise to an inference of discriminatory animus. She identifies no statements, comments or other expressions or events which might be viewed as evincing racial animus. While the Amended Complaint is replete with accusations of such animus, it is devoid of facts from which such animus might be inferred. And the Second Circuit has repeatedly rejected the formulaic assertion of discrimination: Plaintiff is a member of a protected class; Plaintiff suffered adverse treatment; therefore, the adverse treatment must have been because of her membership in the protected class. *See*, *e.g.*, *Lizardo v. Denny's*, 270 F.3d 94, 104 (2d Cir. 2001) (finding no inference of racial animus where "Plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race"); *Lomotey v. Connecticut-Dep't of Transp.*, 355 F. App'x 478, 480 (2d Cir. 2009) ("[W]e must 'distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture.'" (citing *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005))).

Plaintiff also asserts that she had a criminal conviction in 1992 which has since been expunged. Am. Compl., ECF No. 9 at ¶¶ 10–11. Critically, she alleges that there were other city employees "hired notwithstanding their negative past and criminal records, [who] represent different races, colors and/ethnic backgrounds and genders. This adverse position, taken by Ms. Fleeting, was reserved for Coleman alone, who is an African American woman." *Id*. at ¶ 14. However, Plaintiff provides no examples of any such disparate treatment so as to give rise to an inference of discriminatory intent. And the allegation itself suggests that these other unidentified employees were also comprised of diverse racial and ethnic backgrounds.

The same is true for Plaintiff's allegation that other employees at the Hartford WIC office had consistent, structured training experiences, *id.* at ¶ 37, whereas she did not. But again, there are no allegations about these fellow employees (or the training they received) that would support an inference of racially discriminatory intent toward Plaintiff as compared to these fellow employees. Wholly conclusory and such bare assertions are insufficient. *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

In sum, Plaintiff has only "made 'vague and conclusionary allegations' of discrimination . . . without any showing . . . of an 'intentional and purposeful deprivation of constitutional rights.'" *Birnbaum v. Trussell*, 347 F.2d 86, 90 (2d Cir. 1965) (citing *Morgan v. Sylvester*, 125 F. Supp. 380, 386–87 (S.D.N.Y.1954), aff'd per curiam, 220 F.2d 758 (2d Cir.), cert. denied, 350 U.S. 867 (1955)). And Plaintiff's failure to allege any conduct indicating that any actions by Defendants were motivated by a racial or discriminatory animus is dispositive of her federal law claims pursuant to §§ 1981, 1983 and Title VII. *See Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015) (affirming dismissal of Equal Protection and §§ 1981 claims where plaintiff "fail[ed] to allege in other than conclusory fashion any specific instances of discrimination with respect to any individual plaintiff or others similarly situated"); *Powell*, 327 F.2d at 137 (affirming dismissal of a § 1983 claim where plaintiff, inter alia, failed to sufficiently allege invidious discrimination). *See also Zemsky v. City of New York*, 821 F.2d 148, 150–51 (2d Cir. 1987) (affirming dismissal of claims pursuant to § 1981 for failure to sufficiently allege deprivation of rights as a result of racial or class-based animus); *Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012), aff'd sub nom., *Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) (dismissing § 1981 claim because "[t]he naked assertion by plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link

between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss"); *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D. Conn. 2015) (same); *Rowe v. New York State Dep't of Tax'n & Fin.*, 786 F. App'x 302, 305 (2d Cir. 2019) (finding the district court correctly dismissed the plaintiff's Title VII claim where "he made only conclusory allegations that he was denied promotions due to racial animus").

Although the Court agrees that Plaintiff has alleged mistreatment at the hands of the Defendants, the allegations simply do not support the inference that Plaintiff's mistreatment was motivated by race or color. To the contrary, the allegations, at their core, are that Plaintiff was targeted, terminated and otherwise mistreated because of her criminal history. The allegations amply support this claim[7], but the fact that her criminal history may have motivated the Defendants to treat her as they did, does not implicate race or color based discriminatory animus. And having a criminal history does not make Plaintiff a member of a suspect class. *See, e.g.*, *Gillum v. Nassau Downs Reg'l Off Track Betting Corp. of Nassau*, 357 F. Supp. 2d 564, 569 (E.D.N.Y. 2005) (citing *Quick v. Runyon*, No. 96 Civ. 0474, 1997 WL 177858, at * 1 (E.D.N.Y. March 25, 1997) ("It is true that criminal history cannot form the basis of a Title VII . . . claim.")). Accordingly, Counts One through Three are dismissed.[8]

---

[7] In fact, the Amended Complaint asserts that Ms. Fleeting had called for Ms. Coleman to be terminated from her first position at the City's Registrar of Voters office "solely on account of having a criminal conviction." Am. Compl., ECF No. 9 at ¶ 15. Moreover, Ms. Fleeting told Ms. Coleman the reason the Worksite Monitor offer was rescinded was because of her criminal conviction. *Id.* at ¶ 25. When Ms. Coleman was terminated from the Nutritional Aid position, she alleges that Ms. Arroyo "had reviewed Coleman's criminal record and stated that Coleman was not a 'match' for this office." *Id.* at ¶ 43. When Ms. Coleman applied for another position, Ms. Fleeting shared Ms. Coleman's criminal history, leading to recission of her offer. *Id.* at ¶¶ 47–49.

[8] The Court is aware that the Supreme Court has also "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges [(1)] that she has been intentionally treated differently from others similarly situated and [(2)] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citation omitted). Although the Amended Complaint cannot be fairly read to bring a "class of one" equal protection claim, even if so construed, the claim would be dismissed. The Supreme Court has also held that a class of one theory under the Equal Protection Clause is not recognized in the public employment context. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 605 (2008).

*State Law Claims*

Plaintiff also brings two claims under state law — a violation of the Connecticut Fair Employment Practices Act, Stat. § 46a-51 et seq. and defamation. Pursuant to 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over a claim or claims if one of four enumerated circumstances arise. As germane here, section 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446 (2d Cir. 1998). In the absence of any remaining claims over which this court has original jurisdiction, the adjudication of the state law claims is properly left, in the first instance, to the state court. Accordingly, the Court declines to exercise supplemental jurisdiction as to the state-law claims, and those claims are dismissed without prejudice.

**Conclusion**

For all of the foregoing reasons, Defendants' Motion to Dismiss is GRANTED[9] with respect to Counts One through Three — the federal law claims. The state law claims are dismissed without prejudice. The Clerk is directed to enter judgment in favor of Defendants on Counts One through Three and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of January 2026.

                               */s/ Kari A. Dooley*
                               KARI A. DOOLEY
                               UNITED STATES DISTRICT JUDGE

---

[9] Although the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983[,]" the Court need not address Defendants' argument that Defendant Arroyo lacked personal involvement because it finds no constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted).